IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

KELLY KELSO,                        )
                                    )
         Plaintiff,                 )
                                    )
vs.                                 )   Case No. 10-0814-CV-W-ODS
                                    )
PILOT TRAVEL CENTERS                )
and DAWN MUNTER,                    )
                                    )
         Defendants.                )

ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I. BACKGROUND

Plaintiff's state-court Petition remains his operative pleading. It originally asserted six claims against his employer (Pilot Travel Centers) and the general manager (Dawn Munter) at the facility where he worked. In an order dated December 7, 2010, the Court (1) dismissed Count IV in its entirety, (2) dismissed Munter from Counts I, II and III, and (3) dismissed Munter from Counts V and VI insofar as they asserted federal claims. This left the following claims:

| | |
|---|---|
| Count I | workers compensation discrimination |
| Count II | hostile working environment based on workers compensation status |
| Count III | workers compensation retaliation |
| Count V | disability discrimination in violation of federal and state law |
| Count VI | age discrimination in violation of federal and state law |

Admittedly, Counts I through III are not clearly distinguished from each other. In any event, Plaintiffs seek summary judgment on these remaining claims.

II.  DISCUSSION

A.  Judicial Estoppel

Defendants first posit a legal argument: that Plaintiff's representations and omissions in his bankruptcy proceeding judicially estop him from asserting his claims. The Court disagrees.

Plaintiff and his wife filed for bankruptcy in October 2008, seeking to reorganize under Chapter 13.  Nothing about the claims asserted in this case was disclosed in the initial bankruptcy filings: Plaintiff points out that he was still working at the time he filed for bankruptcy and had not been demoted so it was not possible to allege anything about wrongful termination, while Defendants contend some of the events giving rise to his claims occurred before he filed for bankruptcy.  In any event, Plaintiff filed his Charge of Discrimination in November 2009, an Amended Charge of Discrimination in April 2010, and instituted this case in July 2010 but did not amend his bankruptcy filings to reveal the existence of these contingent claims.  Plaintiffs' Amended Chapter 13 Plan was confirmed in January 2011.  Defendants filed for summary judgment in September 2011 and formally argued Plaintiff's failure to disclose these claims in the bankruptcy proceeding estopped him from seeking relief.  Before responding to Defendants' motion, Plaintiff amended his bankruptcy filings to identify the claims in this case as assets in his bankruptcy estate.

"In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.  A debtor's failure to list a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'"  Stallings v. Hussman Corp., 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004)).  This does not mean, however, that the failure to list a legal claim as an asset in a bankruptcy schedule automatically estops the plaintiff from asserting that claim.  Id. at 1049.  Courts are required to apply the factors set forth in New Hampshire v. Maine, 532 U.S. 742 (2001)

and consider (1) whether the positions taken in the two proceedings are inconsistent, (2) whether either court has accepted the position in such a manner that either the first or second court would appear to have been misled, and (3) whether the party asserting the inconsistent positions would derive an unfair advantage or impose an unfair detriment. Id. at 1047 (citing New Hampshire, 532 U.S. at 750-51).

      As stated, the failure to disclose the existence of these claims in the bankruptcy proceeding is functionally equivalent to an assertion that they did not exist. However, Plaintiff amended his bankruptcy filings to disclose the existence of these assets. Thus, while he originally presented inconsistent positions has has since modified his position in one of the proceedings so that his positions could be harmonized. Even if the first factor is satisfied, however, the Court concludes the two remaining New Hampshire factors do not favor estopping Plaintiff. Critical to the Court's conclusion is the fact that Plaintiff has not only amended his bankruptcy filings, but that he has done so in a manner that permits all parties to be put in the same position they would be in if he had made his disclosure at an earlier time. The reorganization plan has been confirmed but has not been completed, so the creditors and the Trustee are free to seek amendments to the Plan if this late-disclosed asset proves to have monetary value. The mere fact that there is a procedure for amending the bankruptcy disclosures in this manner demonstrates the bankruptcy court was not irrevocably misled into believing these assets did not exist. Finally, neither the Defendants in this case or the creditors in the bankruptcy proceeding will be prejudice. Ultimately, it is the Court's assessment that more timely disclosure by Plaintiff would have put the parties in both proceedings would be in practically the same situation they are in now, so there has been neither impingement of either courts' integrity nor prejudice to the parties. To further insure that creditors are not prejudiced. the Court directs the parties to (1) serve copies of all future filings on the Chapter 13 Trustee and (2) advise the Chapter 13 Trustee of all future events in this case (including the status of settlement negotiations, if any, and the scheduling of mediations). The Court will also direct the Clerk of Court to deliver a copy of this Order to the Chapter 13 Trustee.

B. Fatal Inconsistency of Claims

Missouri law prohibits an employer from discharging or otherwise discriminating against an employee for exercising rights granted by the workers compensation laws. Mo. Rev. Stat. § 287.780. Among the elements that must be proven is "an exclusive causal relationship between plaintiff's actions and defendant's actions." Hayes v. Show Me Believers, Inc., 192 S.W.3d 706, 707 (Mo. 2006) (en banc) (quotation omitted). Defendants contend Plaintiff's assertion of claims for age and disability discrimination essentially constitute a *per se* bar to his workers compensation discrimination claim because asserting the former claims is inconsistent with Plaintiff's effort to demonstrate his exercise of workers compensation rights was the exclusive cause. The Court disagrees. While the Court agrees Plaintiff cannot prevail on, for instance, both Count I and Count VI, the law permits him to assert alternative theories of recovery.

C. Uncontroverted Facts in the Record

Finally, Defendants contend the uncontroverted facts in the Record demonstrate they are entitled to summary judgment. A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the

4

mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Defendants first contend they are entitled to summary judgment on Counts I through III because the uncontroverted facts demonstrate Plaintiff was demoted based on seniority and not because of his workers compensation claim. After reviewing the Record, the Court cannot conclude the facts on this point are uncontroverted. The jury might agree with Defendants that Plaintiff was selected for demotion solely based on his seniority. However, there are facts in the Record that might cause a jury to disbelieve Defendants' factual assertions. Summary judgment cannot be granted on the ground Defendants advance.

That said, however, the Court agrees that certain aspects of Counts I through III are less than clear. As noted earlier, these counts asserts claims for discrimination, retaliation, and hostile work environment, all based on Plaintiff's exercise of rights under the worker compensation laws. There is "a distinction between discrimination and [retaliation] under section 287.780." Kummer v. Royal Gate Dodge, Inc., 983 S.W.2d 568, 572 (Mo. Ct. App. 1998). This would seem to support separate claims for (1) the demotion and (2) the harassment. However, the Court does not understand how three claims arise from these circumstances. Whether the demotion is regarded as "discriminatory" or "retaliatory" under section 287.780, it is still just one claim. It seems that the demotion is adequately encompassed under either Count I or Count III, but there is no need for both. The hostile work environment claim is adequately encompassed by Count II; for that matter, so could his demotion claim. Ultimately, the Court concludes that, if supported by the evidence at trial, at most two claims will be submitted to the jury: one for retaliatory (or discriminatory) demotion in violation of section 287.780 and one for creation of a hostile working environment in violation of section 287.780.

Defendants next concede (for purposes of their motion) that Plaintiff is disabled within the meaning of the Americans with Disabilities Act ("ADA"),[1] but contend Plaintiff cannot establish a prima facie case of disability discrimination. Their argument is similar to the one presented for Counts I - III; namely, that the uncontroverted evidence establishes that Plaintiff was demoted as part of a reduction in force based on his seniority. While Plaintiff did not specifically respond to this argument as it related to Count V, he did respond to it in the context of Counts I - III. Summary judgment is denied on Count V for the same reason it is denied with respect to Counts I - III: the Court concludes there are disputed material facts that preclude entry of summary judgment.

Defendants argue that certain events Plaintiff has complained of do not constitute adverse employment actions. In particular, they point to Plaintiff's allegations regarding shift assignments. The Court agrees that designating Plaintiff to work certain shift assignments does not constitute adverse employment action. As a factual matter, Plaintiff agrees that when he was hired he was told that he might be called upon to work various shifts (including overnight and evening shifts), weekends, and holidays. Therefore, assignment to any particular shift could not be deemed "adverse." As a legal matter, changes in shift assignments cannot constitute "adverse employment action" sufficient to give rise to a claim under the ADA. E.g., Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008), *abrogated on other grounds in* Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).[2] The

---

[1] The Court harbors doubts as to whether Plaintiff has a disability within the meaning of the ADA, but the issue has not been presented so there is no reason for the Court to analyze this issue.

[2] It appears that, with respect to Counts I - III, Missouri law contemplates that an assignment to less desirous shifts or duties can constitute an adverse employment action. Crow v. Crawford & Co., 259 S.W.3d 104, 118 (Mo. Ct. App. 2008) (citing cases). However, under the uncontroverted facts of this case, such assignments cannot be considered "adverse" because those assignments were always potential assignments under the terms of Plaintiff's employment, so under the facts of this case such assignments cannot be adverse and, hence, cannot form the basis for Plaintiff's claims.

Court thus concludes that Plaintiff cannot advance these events as adverse employment actions sufficient to support his claims. The only adverse employment actions Plaintiff has alleged are (1) his demotion and (2) the creation of a hostile working environment.

Finally, Defendants contend they accommodated Plaintiff's limitations. This may be, but they also demoted him. Plaintiff's claim seems to be focused on the adverse employment actions (including the alleged harassment) and not on any claim that Defendants failed to accommodate his limitations. Accordingly, Defendants' contention does not entitle them to judgment.

### III.  CONCLUSION

Plaintiff's assignment to particular shifts was not an adverse employment action, so Plaintiff will not be permitted to argue to the jury that his assignment to particular shifts was discriminatory. In all other respects, Defendants' request for summary judgment is denied. A copy of this Order will be delivered to the United States Trustee.

IT IS SO ORDERED.

DATE: December 8, 2011

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT